LAW LIBRARY

NO. 28596

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

2010 JUN 23 AM 8:59

FILED

JEAN R. KIKUMOTO
CLERK APPELLATE COURTS
STATE OF HAWAII

JANE DOE, Plaintiff-Appellant/Cross-Appellee v.
JOHN ROE, Defendant-Appellee/Cross-Appellant

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
KONA DIVISION
(FC-D No. 06-1-007K)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Fujise and Ginoza, JJ.)

        Plaintiff-Appellant/Cross-Appellee Jane Doe (Wife)
appeals from the following orders issued by the Family Court of
the Third Circuit (family court):[1] (1) Order Re: Divorce Trial
and Miscellaneous Motions, filed February 20, 2007; (2) Order
Denying Plaintiff's Motion for Reconsideration filed March 2,
2007, filed May 24, 2007; and (3) Divorce Decree, filed May 24,
2007. Defendant-Appellee/Cross-Appellant John Roe (Husband)
cross-appeals from orders (1) and (3).

        The parties were married on February 26, 1994 (date of
marriage or DOM). Prior to marriage, they had lived together for
about a year. They have two children,[2] and were separated in or
about December 2005.

        On January 9, 2006, Wife filed a complaint for divorce
in the family court, asserting that the marriage was
irretrievably broken. A divorce trial was held over the course
of four days, concluding on October 19, 2006 (the date of
completion of evidentiary part of trial or DOCOEPOT).

        On February 20, 2007, the family court issued its Order
Re: Divorce Trial and Miscellaneous Motions, which directed
Husband's attorney to prepare a divorce decree consistent with

---

        [1] The Honorable Aley K. Auna, Jr. presided.

        [2] The parties reached settlement with regard to child custody and
visitation.

that order. On March 2, 2007, Wife filed a motion for reconsideration. On May 24, 2007, the Divorce Decree, an Order Denying Plaintiff's Motion for Reconsideration, and an Ex Parte Motion and Order Correcting Clerical Mistake were filed.

I.   Issues on Appeal

On appeal, Wife alleges fourteen points of error and Husband alleges two. Wife raises the following points of error:

(1) The family court erred in its valuation of Husband's capital contribution credit for his interest in CLH.[3]

(2) The family court erred in its determination of the current value of Husband's 7% interest in PPPI.

(3) Regarding valuation of the parties' interests in a condominium located in San Francisco, California, the family court "erroneously found that '[b]ecause of the history of the parties not using any marital funds for the maintenance and costs associated with this property, it would be just and equitable to conclude that Defendant owes half of all of the debt and costs paid for by Defendant's sister for this property.'"

(4) The family court's application of a "double discount" to Husband's interest in M Corporation (M Corp.) based on Husband's "lack of control" over the property and a "lack of marketability" was not supported by the evidence.

(5) The family court erred in excluding from the marital estate a $170,000 receivable due to Husband from his sister.

(6) Regarding a grand piano, the family court's order failed to provide for equalization in the event one party elected to keep the piano.

(7) The family court erred in its valuation of Husband's capital contribution credit for PPBGI.

---

[3]   Full names of the parties, their relatives, as well as partnerships, corporations, and companies are not utilized in this Memorandum Opinion in light of the family court's February 20, 2007 "Order Designating the File as Confidential."

(8) The family court erred in awarding Husband a capital contribution credit of $116,886 for the contingent asset of a termination benefit under his CLH employment contract.

(9) The family court erred in awarding Husband a capital contribution credit for Kamuela property purchased two days prior to DOM because the parties had created a premarital economic partnership.

(10) The family court erred in failing to deviate from the marital partnership principles.

(11) There is no factual basis to support the family court's finding that permanent alimony would not be just and equitable under the circumstances of the case.

(12) The family court's determination of Husband's child support obligation erroneously includes a credit for child care expense.

(13) The family court erred in denying Wife's motions to strike: (a) Husband's closing argument; and (b) Husband's response to Wife's motion to strike Husband's closing arguments.

(14) The family court erred in the scope of its order respecting judicial notice.

Husband's points of error on appeal are as follows:

(1) The family court erred in concluding Husband had a beneficial ownership interest for divorce property division purposes in the California condominium.

(2) The family court erred in concluding Husband had a beneficial ownership interest for divorce property division purposes in M Corp.

II.  Standard of Review

We review a family court's decisions regarding division of marital property, alimony, and child support under the abuse of discretion standard.[4]  "Generally, the family court possesses

---

[4]  Hawaii Revised Statutes (HRS) § 580-47 addresses the family court's authority regarding division of marital property, alimony, and child support and provides that the court may issue orders "as shall appear just and
(continued...)

3

wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

Under the abuse of discretion standard, we will not disturb the family court's decision unless: "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant, (2) the family court failed to exercise its equitable discretion, or (3) the family court's decision clearly exceeds the bounds of reason." Wong v. Wong, 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App. 1998) (quoting Bennett v. Bennett, 8 Haw. App. 415, 426, 807 P.2d 597, 603 (1991)).

A family court's findings of fact are reviewed under the "clearly erroneous" standard. In re Doe, 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003); In re Jane Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996). Under this standard, a finding of fact will not be disturbed unless "'(1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.'" In re Doe, 101 Hawai'i at 227, 65 P.3d at 174 (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)). "Substantial evidence" is defined as "'credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.'" In re Doe, 101 Hawai'i at 227, 65 P.3d at 174 (quoting In re Jane Doe at 46, 928 P.2d at 888).

A family court's conclusions of law "are reviewed on appeal de novo, under the right/wrong standard . . . [and] consequently, are 'not binding upon an appellate court and are

---

[4] (...continued)
equitable". HRS § 580-47 (2006).

freely reviewable for their correctness.'" Fisher, 111 Hawai'i at 46, 137 P.3d at 360 (quoting In re Doe, 95 Hawai'i at 190, 20 P.3d at 623). A conclusion of law "that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Chun v. Bd. of Trs. of Employees' Ret. Sys., 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citation omitted); Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (2009).

III. Discussion

A.   Wife's Points of Error 1 and 2

Wife's points of error 1 and 2 address factual determinations made by the family court. We review these under the clearly erroneous standard and for each of these points we conclude there is substantial evidence in the record to support the family court's determinations.

Valuation of Capital Contribution Credit for Husband's Interest in CLH - Wife's Point of Error #1

Wife does not contest that Husband owned 834 shares of CLH on DOM. She contends, however, that the shares should have been valued pursuant to a stock redemption agreement, which would have given the shares a DOM value of $923,729 (the percentage of shares at .5 times annual revenues). Instead, the family court valued the shares at $2.5 million.

In reaching its decision, the family court relied on the testimony of several CLH stockholders, including testimony regarding CLH's repurchase of stock in the 1989-90 time period (shortly after the redemption agreement was entered) from stockholder "W", who held a 25% interest in CLH at that time. Notwithstanding the stock redemption agreement, stockholder W's shares were repurchased for $3.6 million based on a calculation closer to 1.5 times annual revenues, for which there was testimony indicating this was the industry standard. Wife challenges the family court's reliance on these numbers, alleging that a majority portion of the $3.6 million was due to a non-

competition agreement. However, evidence was also presented that the repurchase was structured this way for tax purposes.

There is also evidence that Husband's financial statements in 1992 and 1996 listed the value of his CLH stock at $2.5 million.[5] Further, Wife does not challenge the family court's findings that: there is no evidence CLH ever redeemed its stock pursuant to the stock redemption agreement; and the stock redemption agreement was cancelled by mutual agreement of all the stockholders in 1998.

Current Value of Husband's 7% interest in PPPI - Wife's Point of Error #2

Husband was one of four stockholders in PPPI, holding a 7% interest. The parties agreed as to the DOM value of Husband's 7% interest, but Wife disputes the family court's determination that its value on June 30, 2006 (the closest available date to DOCOEPOT) was $87,769, which is less than the DOM value. Wife's primary argument is that the family court erred in relying on the opinion of Husband's expert because the expert's valuation opinion in this case conflicted with, and is lower than, a prior valuation of PPPI he had done in August 2002 and upon which two subsequent stock transactions had relied.

In his report and testimony, Husband's expert addressed the difference between the two valuations and stated that the 2006 valuation done for this case is significantly less than the 2002 valuation, in part, because the 2002 valuation was based on predicting PPPI's future income and "the actual results in the period 2002 to 2006 were significantly less than the results anticipated in June 2002". We further note that, although Wife sought to discredit the valuation by Husband's expert, her own primary witness on this issue did not do a valuation of the PPPI shares or proffer an expert opinion on their value.

---

[5] Although Wife contends that Husband overvalued many items in these financial statements, it is properly left to the family court to assess the evidence and the credibility of the witnesses.

B.   San Francisco Condominium - Husband's Point of Error #1
     and Wife's Point of Error #3

The family court held that Husband has a 50% ownership interest in a condominium located in San Francisco, California and that it is part of the marital estate.  The family court further held that Husband's sister (Sister), who owns the other 50% interest,[6] had paid off a $35,000 mortgage on the property and had made "improvements" of at least $220,000,[7] and because the parties had not used any marital funds for maintenance and costs of the property, "it would be just and equitable to conclude that Defendant owes half of all of the debt and costs paid for by Defendant's sister for this property."  In calculating the category 2 value to be divided between Husband and Wife, the family court first deducted out one-half of the amount expended by Sister (including expenditures prior to DOM), resulting in a category 2 value of $59,500.[8]

Husband contends on appeal that the condominium should not have been included as a marital asset because although he has been on title as a 50% owner since 1979 (when the condominium was purchased by his parents while he was studying in San Francisco), his parents and siblings always intended for Sister to own the property, and during their marriage he and Wife did not assert to

---

[6]  The family court's uncontested findings are that the condominium was purchased in 1979, with Husband's father owning 50% and Husband owning 50%. Husband's father then deeded his interest to Husband's mother, and upon mother's death, her 50% ownership interest went to Sister.  Husband did not contribute to the purchase of the property and after 1983 he did not pay any money to maintain the property.

[7]  The record indicates that this amount consists of: renovating the bathroom in 1988 (cost of $21,000), remodeling the kitchen in 1989-90 (cost of $40,000), assessments for exterior remodeling of the building in 1995 ($9,000), interior remodeling in 1998 (cost of $16,000), property taxes from 1992-2005 ($24,000), and homeowners association fees ($112,000).

[8]  The parties agreed that Defendant's 50% ownership interest had a value of $126,250 at DOM and $314,250 at DOCOEPOT, rendering an increased value of $188,000.  The family court then divided sister's expenditure of $257,000 ($35,000 mortgage + $222,0000) in one-half ($257,000 x .05 = $128,500) and deducted that amount from the increased value ($188,000 - $128,500 = $59,500).

Sister that Husband had an ownership interest.  We view this point of error as raising a mixed question of fact and law, and thus review it under the clearly erroneous standard.  <u>Chun</u>, 106 Hawai'i at 430, 106 P.3d at 353.

Based on our review of the record, there was substantial evidence to support the family court's determination that Husband had a beneficial interest in the condominium. Husband lived at the property for several years while a student in San Francisco, paid some of the expenses for the property while he lived there, and has been a 50% title holder since the property was first purchased.  Although Sister, for many years, has paid for most of the expenses, Husband's title was never transferred to her or anyone else.  Husband thus has a legal claim to ownership of the property and it was not error for the family court to conclude he had an interest for purposes of property division in this divorce proceeding.

Wife contends, in turn, that it was error for the family court to conclude that Husband "owes half of all of the debt and costs paid for by [Husband's] sister for this property." The family court's initial decision, that equity called for Husband to contribute toward the property given the expenses incurred by Sister, is committed to the broad discretion of the family court and we will not disturb that decision.

However, under the abuse of discretion standard, we believe the family court disregarded rules or principles of law in properly calculating or assessing the amounts attributable to Husband's interest as a co-tenant of the condominium.  Because large portions of Sister's expenses for the property were incurred <u>prior</u> to the DOM, it was error to include those amounts in calculating the category 2 amount.  Rather, category 2 amounts address "[t]he increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously <u>from the DOM to the DOCOEPOT</u>".  <u>Tougas v. Tougas</u>, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994) (emphasis added) (quoting <u>Malek v. Malek</u>, 7 Haw.App. 377, 380-81 n.1, 768

P.2d 243, 246-47 n.1 (1989)). To the extent the family court determines that equity requires taking account of Sister's expenses and improvements prior to DOM, that should be calculated into the initial category 1 amount.[9]

Second, regarding improvements to the condominium, it appears the family court based its calculations entirely on the amounts Sister expended, rather than the value added to the property due to such improvements. As the family court itself noted, the appreciation to the overall value of the property was the basis for equitably requiring Husband to contribute toward the condominium, and thus the change in value is the key consideration. See Helbush v. Helbush, 108 Hawai'i 508, 517, 122 P.3d 288, 297 (App. 2005) (without supporting evidence, it was error to conclude that expenditure of $16,695 for home renovations resulted in a $16,695 increase in net market value to the house). Moreover, for partition actions involving co-tenants, improvements made in good faith by one co-tenant are credited to that co-tenant to the extent of the increased value of the property, irrespective of the cost. See Nahaolelua v. Kaaahu, 10 Haw. 662, 1897 WL 1637 (Haw. Rep. 1897); Wallace v. Daley, 220 Cal. App. 3d 1028 (1990).[10] If possible, therefore, the family court should account for improvements based on their impact to the value of the property. If the evidence does not allow the family court to make such a determination, the court may rely on its broad discretion to determine a just result.

In sum, to the extent possible, the family court should recalculate the amounts related to the condominium so that: amounts Sister incurred prior to DOM are accounted for in the

---

[9] Category 1 sets out the "net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) . . . ." Tougas, 76 Hawai'i at 27, 868 P.2d at 445 (emphasis added).

[10] Although this is not a partition action, we find it proper to refer to partition cases because their purpose is akin to what the family court seeks to do here -- in equity, determine the respective value owed to Husband for his co-tenant interest in the condominium and the equitable amount he should contribute to that property. Both Hawaii and California law call for crediting Sister with the value of improvements, not simply their costs.

9

category 1 value; amounts Sister incurred after DOM are considered in determining the category 2 value; and for the improvements to the property, they are calculated according to the change in value to the property and not the cost of the improvement.[11]

C.   M Corporation - Husband's Point of Error #2 and Wife's Point of Error #4

M Corporation (M Corp.) was established before DOM by Husband's parents.  Husband and each of his four siblings holds a 20% interest.  The principal asset of the corporation is a residential property in Honolulu.

Husband contends he does not have a beneficial interest in the corporation for purposes of property division because it was the wish of his parents that the assets in the corporation be held in trust for the benefit of future generations of the family.  Notwithstanding this argument, Husband does not contest that he holds a 20% interest and does not contest the family court's finding that he showed losses from M Corp. on his yearly income tax returns and included M Corp. as an asset in one financial disclosure statement.  There is substantial evidence in the record to support the family court's ruling and it did not clearly err in deciding that Husband has a beneficial interest in M Corp.

Wife, in turn, contends the family court erred by applying a double discount to the fair market value of Husband's interest because such finding was not supported by the evidence and her expert disagreed with Husband's expert that such discounts were appropriate.  The family court considered testimony from experts on both sides and found testimony by

_____

[11]   For basic maintenance of the property -- i.e. mortgage payments, property taxes and homeowners association fees -- it is not error to utilize the cost amount because these types of payments maintain (rather than increase) the ownership interest.  However, as to improvements -- such as the interior remodeling in 1998 -- the change in value to the property, as opposed to costs, is the appropriate consideration.  See Nahaolelua, 10 Haw. at 663-64.

Husband's expert credible that "lack of control" and "lack of marketability" adjustments should be utilized. "[I]t is axiomatic that reconciling conflicting testimony is beyond the scope of appellate review." Schiller, 120 Hawai'i at 288, 205 P.3d at 553 (quoting Onaka v. Onaka, 112 Hawai'i 374, 384, 146 P.3d 89, 99 (2006)). Under a clearly erroneous standard of review, there is substantial evidence in the record to support the family court's finding that a double discount should be applied.

D.    Exclusion of $170,000 Receivable from the Marital Estate - Wife's Point of Error #5

Wife contends the family court erred in excluding from the marital estate a receivable in the amount of $170,000, owed by Husband's sister (Sister), for a loan made during the marriage and which was paid back sometime after Husband and Wife separated. Husband's uncontested testimony is that he used the funds on expenses for the marital residence,[12] landscaping, living expenses and his legal expenses. The family court concluded "there is no evidence presented that such a receivable now exists."

Wife does not argue on appeal, and did not assert below, that Husband wasted these funds during the pending divorce or was fiscally irresponsible. See Higashi v. Higashi, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004). Rather, without citing any authority, she asserts that "[i]n the same way that a tax return from marital tax refunds received by one party prior to [DOCOEPOT] should be credited to both parties, Wife is entitled to a credit for one-half this $170,000 receivable." We disagree. The family court's decision was within its broad discretion and it was not required to include funds as part of the marital estate which no longer existed.

_____

[12]    This is the residence where Wife resided after the parties separated in December 2005 and which was ultimately awarded to Husband by the family court's February 20, 2007 order.

E.    Grand Piano - Wife's Point of Error #6

The family court ruled that, "[r]egarding the . . . Grand Piano, if neither party wants it, it shall be sold at the best possible price and the net proceeds shall be divided equally."[13]  Wife contends the family court erred in that "no provision was made for equalization in the event that one party elected to keep the piano."  Husband argues in response that "[i]mplicitly assumed in the Family Court's order is the prospect of a subsequent agreement between the parties under which one party will take the piano and pay the other party an agreed sum. Failing that, the piano would be sold on the open market in a manner best calculated to get the best price."

While the family court has wide discretion in these matters, it is error where "the family court fail[s] to exercise its equitable discretion".  Tougas, 76 Hawai'i at 26 n.6, 868 P.2d at 444 n.6 (1994) (quoting Bennett v. Bennett, 8 Haw.App. 415, 416, 807 P.2d 597, 599 (1991)).  Here, Wife is correct that the family court failed to address equalization in the event one of the parties chooses to keep the piano.  On remand, the family court should therefore exercise its discretion and determine a proper equalization amount in the event one of the parties agrees to keep the piano.

F.    Capital Contribution Credit For PPBGI - Wife's Point of Error #7

Wife contends that the family court erred by awarding Husband a $144,137 category 1 contribution credit for PPBGI, in which Husband had owned 100% of the stock, because this value was not based on evidence in the record.  We disagree and, based on Husband's testimony and other evidence adduced at trial, hold that there was no clear error.

---

[13]  The parties agree that the piano is quite valuable, with Wife asserting it has a "stipulated value of $70,000" while Husband cites a September 2006 letter which states the piano "has a current value of $70,000[,]" and that "[t]he current replacement value of this piano in 2006 is $116,500.00."

G.    <u>Capital Contribution Credit for Contingent Termination Benefit Under CLH Employment Contract - Wife's Point of Error #8</u>

Wife contends it was error for the family court to award Husband a $116,886 category 1 contribution credit for a benefit under his employment contract with CLH which would be triggered upon his termination.  Wife argues "the contingency did not occur to vest the termination benefit of the contract."

In <u>Linson v. Linson</u>, 1 Haw.App. 272, 278, 618 P.2d 748, 751 (1980), the phrase "estate of the parties" as set forth in HRS § 580-47 was construed broadly, "to facilitate . . . the court's ability to reach 'just and equitable' results as mandated by HRS § 580-47."  There, "estate of the parties" was interpreted to mean "anything of present or prospective value", and thus the court held that nonvested military retirement benefits were part of the estate of the parties.  <u>Id.</u>  Here, given the broad definition of "estate of the parties", it was not error to include Husband's contingent termination benefit as a category 1 contribution credit.

As raised by Wife, however, if this benefit had a value at DOM, "it should have a DOCOEPOT value as well."  The family court's orders do not reflect that the court addressed the DOCOEPOT value.  On remand, the family court should exercise its discretion to determine the appropriate DOCOEPOT value, if any.

H.    <u>Kamuela Property - Wife's Point of Error #9</u>

Two days prior to DOM, Husband purchased property in Kamuela.  Wife contends it was error for the family court to award Husband a capital contribution credit for this property because the parties had already been living together in a "premarital economic partnership."

> [A] "premarital economic partnership" occurs when, prior to their subsequent marriage, a man and a woman cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities.

<u>Helbush</u>, 108 Hawai'i at 515, 122 P.3d at 295.

The family court held that "[s]imply cohabitating together does not automatically transform a relationship into a premarital economic partnership" and made unchallenged findings that there was no credible evidence that Wife had contributed financially toward the purchase of the property, had worked to enhance its value prior to DOM, or had participated in its upkeep prior to DOM. Wife may have participated in the selection of the property, but given this record, we find no clear error in the family court's ruling.

I.  Failure To Deviate From Marital Partnership Principles
    – Wife's Point of Error #10

Wife contends that the family court should have deviated from the marital partnership model. When deciding the division of marital partnership property, the Partnership Model requires the family court to proceed as follows:

> (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

Jackson v. Jackson, 84 Hawai'i 319, 332, 933 P.2d 1353, 1366 (App. 1997). Question (2)(a) is a question of law, reviewed under the right/wrong standard of review. Id. at 332-33, 933 P.2d at 1366-67. Questions (3) and (4) are discretionary matters, reviewed under the abuse of discretion standard. Id. at 333, 933 P.2d at 1367.

> In determining whether one or more valid and relevant considerations authorize the family court to deviate from the Partnership Model, the family "court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." HRS § 580-47(a) (1993). Other than relative circumstances of the parties when they entered into the marital partnership and possible exceptional situations, the above quoted part of HRS § 580-47(a) requires the family court to focus on the present and the future, not the past.

Id. (quoting Epp v. Epp, 80 Hawai'i 79, 89, 905 P.2d 54, 64 (App. 1995)).

Based on our review of this issue, the only "valid and relevant consideration" presented in this case, as a matter of law, is the tax ramification from the implicit requirement that Wife will have to sell marital partnership property (part of a Fidelity stock account) to make the equalization payment ordered by the family court.[14] Because we conclude the sale of marital partnership property is implicitly ordered, "the family court must consider the tax ramifications of the sale." Jackson, 84 Hawai'i at 334, 933 P.2d at 1368. On remand, the family court should consider the tax ramifications of Wife selling part of her Fidelity stock account and "exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation." Jackson, 84 Hawai'i at 332, 933 P.2d at 1366.

J.    Alimony - Wife's Points of Error #11

Wife contends the family court erred in awarding her "transitional" alimony and in finding that it would not be just and equitable to award her with permanent alimony. We review this under the abuse of discretion standard and the considerations set forth in HRS §580-47, which state in relevant part:

> In addition to any other relevant factors considered, the court, in ordering spousal support and maintenance, shall consider the following factors:
>
> (1)   Financial resources of the parties;
> (2)   Ability of the party seeking support and maintenance to meet his or her needs independently;
> (3)   Duration of the marriage;
> (4)   Standard of living established during the marriage;
> (5)   Age of the parties;
> (6)   Physical and emotional condition of the parties;

---

[14]   Total value allocated to Wife is $1,248,988 (of which $1,151,346 is from a Fidelity account). From this total value, the family court's May 24, 2007 Divorce Decree requires a payment from Wife to Husband of $437,300. Given the circumstances of the case, this implicitly requires Wife to sell part of the Fidelity account.

(7)    Usual occupation of the parties during the marriage;
(8)    Vocational skills and employability of the party seeking support and maintenance;
(9)    Needs of the parties;
(10)   Custodial and child support responsibilities;
(11)   Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;
(12)   Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made; and
(13)   Probable duration of the need of the party seeking support and maintenance.

Hawai'i Revised Statutes (HRS) § 580-47(a) (2006).

Further, when ordering a party to "provide for the support and maintenance of the other party," the trial court is required to take into consideration: "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." HRS § 580-47(a).

Here, the family court found that Wife would be "left with substantial assets" under the orders of the court, and that "[u]nder the circumstances of this case, it would not be just and equitable to award permanent alimony to Plaintiff . . . [rather,] [t]ransitional alimony would be more appropriate." The court then ordered Husband to pay alimony to Wife in the amount of $2,500 per month for a period of two years.

In making its award, the court considered that: (1) Husband had the greater earning capacity and had been the primary financial supporter of the family; (2) Wife had worked on and off during the years, was relatively young, did not have any physical limitations, and had the ability to be self-sustaining; and (3) the parties had a relatively affluent lifestyle. The court examined the most recent income and expense statement produced by Wife, which showed no income and $12,760 in expenses, all of which were paid for by Husband. The court found that Wife would have $4,400 in monthly expenses after the divorce, as she

would not have to pay for the mortgage ($5,000), real property taxes ($260), hired help ($800), or childcare expenses for the nanny ($2,300). Also, Husband had been paying $3,500 per month for temporary family support, as well as the expenses for the marital residence since March 2006.

The trial court properly considered the relevant factors, and its decision not to award Wife permanent alimony was not an abuse of discretion.

K.    Child Support - Wife's Point of Error #12

Wife next argues that, in determining child support payments, the trial court erred in giving Husband a child care credit in the amount of $2,300 for expenses while he worked. Based on our review of this issue and the record in this case, we find no clear error.

L.    Motions To Strike - Wife's Point of Error #13

Wife argues that the family court reversibly erred in denying two motions to strike (Motion to Strike Husband's Closing Argument and Husband's Response to Wife's Motion to Strike Husband's Closing Argument).

Rule 103(a) of the Hawaii Rules of Evidence (HRE) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." HRE Rule 103(a). Moreover, Rule 61 of the Hawai'i Family Court Rules (HFCR) provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

HFCR Rule 61.

Based on our review of the arguments asserted and the record, we are unconvinced that it was error for the family court

to deny the motions to strike or that Wife's substantial rights have been affected.

M.    Scope of Judicial Notice - Wife's Point of Error #14

Wife argues that the trial court erred in taking "judicial notice of all the files, pleadings, and exhibits considered in all prior hearings in the case."

In State v. Kotis, 91 Hawaiʻi 319, 984 P.2d 78 (1999), the Hawaii Supreme Court discussed the propriety of taking judicial notice of records in the same or related proceedings. Of import to the court:

> A distinction must be carefully drawn between taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents....
> ... [W]hile a Court may take judicial notice of each document in the Court's file[,] it may only take judicial notice of the truth of facts asserted in documents such as orders, judgments and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case.

Id. at 342, 984 P.2d at 101 (quoting Gottsch v. Bank of Stapleton, 458 N.W.2d 443, 455-56 (1990)).

Wife first raised her concern about the scope of the judicial notice in her motion for reconsideration filed March 2, 2007.  In both her motion for reconsideration and now on appeal, Wife does not point to any particular records from prior hearings in this case that raise a concern.  Likewise, Wife does not articulate any harm arising from the family court's decision to take judicial notice.  Moreover, from our review of the family court's orders, we discern no improper use or reliance on unsubstantiated facts from records in prior hearings by way of judicial notice.  We therefore conclude the family court did not err in the manner or scope in which it took judicial notice of files, pleadings, and exhibits considered in prior hearings in this case.

IV.  Conclusion

Based on the foregoing, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, June 23, 2010.


On the briefs:

Michael S. Zola
for Plaintiff-Appellant/
Cross-Appellee

William C. Darrah
Elizabeth Paek
for Defendant-Appellee/
Cross-Appellant

Chief Judge

Associate Judge

Associate Judge